**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| F2E HOLDINGS LLC *ex rel.* MISSION INTEGRATED TECHNOLOGIES, LLC, | |
| Plaintiff, | Case No. 1:23-cv-1608 (LMB/JFA) |
| v. | |
| TIMOTHY G. CLEMENTE, *et al.*, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO MOTION TO AMEND

Defendants Joshua Clemente and Timothy Clemente submit this opposition to plaintiff's motion to amend the complaint (ECF No. 13).

### INTRODUCTION

On October 16, 2023, plaintiff F2E Holdings LLC ("F2E") filed a derivative complaint in Fairfax County Circuit Court on behalf of Mission Integrated Technologies, LLC ("MIT"). F2E's complaint had obvious problems from the start. F2E brought stale claims based on inconsistent and demonstrably false allegations, without first investigating even basic issues like who owns MIT, and who is authorized to manage MIT. Defendants repeatedly told plaintiff's counsel that the complaint contained fundamental contradictions and demonstrably false statements, but plaintiff said it had no plans to amend the complaint. Then, minutes before the parties Rule 16(b) conference, plaintiff changed course and moved to amend, seeking to remove F2E as a plaintiff and restructure the suit as direct action.

Plaintiff's conduct epitomizes bad faith. Bad faith, the Fourth Circuit has explained, includes "'[d]ishonesty of belief or purpose.'" *United States ex rel. Nicholson v. MedCom*

*Carolinas, Inc.*, 42 F.4th 185, 198 (4th Cir. 2022) (quoting Black's Law Dictionary). "To act with a dishonesty of purpose," in turn, "is to act for the wrong reasons. It may be outright lying, deceiving, playing unjustifiable hardball, slacking off, intentionally causing confusion, or stubbornly refusing to follow rules—you can imagine cases where a party just wants to cause chaos—or it might be something as mundane as noticing someone's mistake and saying nothing about it." *Id.* Plaintiff's motion to amend should be denied because plaintiff has repeatedly acted in bad faith, to the prejudice of the defendants.

## ARGUMENT

Leave to amend is not automatic; there are "circumstances that justify denying a plaintiff the opportunity to try again." *Nicholson*, 42 F.4th at 197. One of those circumstances is bad faith by the party seeking leave to amend. *Id.* Last year, the Fourth Circuit reiterated that denial of a motion to amend is warranted when a plaintiff is acting in bad faith. *Id.* at 198-200. Plaintiff's pending motion to amend should be denied for that reason.

The proposed amended complaint will not advance the goal of resolving cases "on the merits, instead of on technicalities," as the Fourth Circuit rightly encourages (*id.* at 197). Instead, the proposed amendments seek to obfuscate the facts and impede discovery, in a bad-faith effort to run up the defendants' costs and delay the resolution of this dispute. Indeed, plaintiff is already refusing to respond to discovery requests based on the pending motion to amend. *See* Ex. A (Objections to Requests for Production) at 1 (stating "F2E objects to these Requests in their entirety insofar as a motion to amend has been filed," and if granted "F2E will no longer be a party to this case and thus will not be subject to discovery under Rule 34"). Plaintiff's motion to amend should be denied to avoid further gamesmanship and delays.

I.   **Plaintiff refused to correct obvious errors in the complaint for months despite repeated requests by the defendants.**

This suit began as a derivative action filed in Fairfax County Circuit Court. The suit was brought by MIT's majority owner, plaintiff F2E, who has nurtured a list of grievances against MIT's original president, Tim Clemente, for years. *See, e.g.*, ECF No. 1-1 (Complaint) ¶ 54 (alleging Tim registered a website for MIT in 2017 without F2E's permission); *Id.* ¶¶ 28-29 (complaining Tim's son, Josh, did not send F2E a signed NDA in 2013); Ex. B (plaintiff's initial disclosures) at 7 (complaining Tim Clemente did not spend enough time on MIT marketing).

The complaint is based on inaccurate and inconsistent allegations, as the defendants have explained to plaintiff's counsel from the outset. To justify bringing derivative claims, for example, plaintiff F2E emphasized that Tim Clemente "was MIT's President and only member with management authority." *See* ECF No. 7 (Corrected Opp. to Demurrer) at 2 n.1. But the complaint shows that F2E frequently acted unilaterally on behalf of MIT, without consulting MIT's president, or notifying MIT's members. *See, e.g.*, ECF No. 1-1 ¶ 77 (stating "F2E…engaged an attorney on behalf of MIT [in 2019] to write letters to Tim and Josh demanding that they supply F2E with the information requested"); J. Clemente Answer (ECF No. 1-3) ¶ 2 (explaining F2E's sole owner, Fahmi Alubbad, "unilaterally initiated [IPR] proceedings in MIT's name" in August 2023).

Plaintiff refused to correct false allegations in the complaint despite repeated requests from defense counsel, and stated they had no plans to amend the complaint during the parties December 6, 2023 Rule 26 conference. Then, weeks later, plaintiff changed its tune, filing a motion to amend minutes before the start of the parties' Rule 16(b) conference. ECF No. 13. The proposed amended complaint is a bad-faith effort to prolong this dispute and impose additional costs on the defendants, by changing both the plaintiff and the basic premise of the lawsuit months after the complaint was filed, without addressing obvious flaws in the underlying claims.

3

### A.  Plaintiff repeatedly made inaccurate and conflicting statements about who owns and controls MIT.

Plaintiff F2E filed claims against Tim and Josh Clemente "derivatively on behalf of Mission Integrated Technologies, LLC." ECF No. 10 at 1. F2E initially argued that a derivative suit was proper because efforts to cause MIT to bring this suit directly would have been futile, since Tim Clemente was MIT's "only other member" apart from F2E. ECF No. 5 (Opp. to Demurrer) at 3. After receiving plaintiff's opposition and Rule 7.1 statement, defense counsel pointed out that the complaint at times states that MIT has three members, not two. *See* ECF No. 1-1 ¶ 42 (stating "the current ownership structure of MIT is as follows: F2E owns approximately 81%; Tim owns approximately 13%; and Fournier owns approximately 6%").

Two days later, F2E filed a corrected opposition acknowledging its prior statements regarding MIT's ownership were incorrect. Plaintiff's corrected opposition acknowledged that Paragraph 2 of the Complaint was incorrect, and said it should instead say "that Tim was MIT's President and <u>only member with management authority</u>." ECF No. 7 at 2 n.1 (emphasis in original). Plaintiff then argued that F2E was still excused from making a pre-suit demand on MIT, because the suit seeks relief from Tim Clemente, and Tim Clemente is "MIT's president and only member with management authority." *Id.* at 4. Plaintiff did not take the opportunity to ensure that related allegations in the complaint were accurate, or even logically consistent, however, and expressed no intention to amend the complaint.

### B.  Plaintiff sought leave to amend only after its misleading and inconsistent allegations painted F2E into a corner.

Plaintiff's new justification for filing a derivative suit quickly fell apart as well. The defendants had already repeatedly explained that the complaint contained inconsistent allegations about Tim's authority as MIT's president. F2E emphasized that Tim Clemente was MIT's President when it sought to justify bringing derivative claims, for example, but F2E also

unilaterally directed MIT's actions when it saw fit, without seeking approval from MIT's president, or notifying MIT's members. *See*, *e.g.*, ECF No. 1-1 ¶ 77 (stating "F2E…engaged an attorney on behalf of MIT [in 2019] to write letters to Tim and Josh demanding that they supply F2E with the information requested"); ECF No. 1-3 ¶ 2 (explaining F2E's sole owner, Fahmi Alubbad, "unilaterally initiated [IPR] proceedings in MIT's name" two months before this complaint was filed). Tim Clemente's answer similarly explained that F2E's allegations could not be squared with "F2E/Alubbad overtly maintaining a continuous business relationship with Defendant as MIT's President up to the date of this writing" without seeking to "remove Defendant from his position as President of MIT." ECF No. 1-5 (T. Clemente Answer) at 49 ¶ 3.

Eventually, F2E's inconsistent allegations about who controls MIT caught up with it. F2E originally proposed a standard protective order that would allow the parties to mark sensitive documents as confidential. The defendants reviewed the proposed standard protective order and had no objection to it. Then, one week later, plaintiff switched plans and said a more complicated protective order was needed, so that some MIT documents could be marked "attorneys' eyes only," which would prevent Tim Clemente from using those documents at all. Ex. C (Dec. 13, 2023 email exchange) at 3-4. In response, both defendants questioned how there could be "confidential MIT documents that MIT's president is not entitled to see." *Id.* at 2-3. Counsel for F2E then questioned "the basis for the contention that Mr. Clemente remains employed by MIT in any managerial capacity." *Id.* at 1. In response, defense counsel explained: "the premise of the derivative action is that, at the time the complaint was filed: 'Tim was MIT's President and only member with management authority.'" *Id.* (quoting plaintiff's corrected demurrer opposition).

F2E then sought to terminate Tim as MIT's president. On December 18, 2023, plaintiff's counsel sent Tim a one-page written consent signed by Fahmi Alubbad on behalf of F2E, stating

Tim was "removed, effective immediately" as President of MIT and "his actual or apparent authority to act on behalf of the Company is revoked, and his involvement in the Company's business or affairs is terminated." Ex. D at 3 (Written Consent dated Dec. 15, 2023).

Defendants filed a reply in support of the pending demurrer the same day, explaining that despite previously arguing that it would have been futile to ask MIT to bring these claims directly, F2E now claims that it can unilaterally fire MIT's president any time it wishes, and direct MIT to act as it sees fit. ECF No. 12 (Reply in Support of Demurrer) at 2. Two days later, plaintiff moved to amend the complaint, seeking to remove F2E as a party entirely, and restructure the complaint as a direct action brought by MIT. ECF No. 13.[1]

Plaintiff has already repeatedly changed its position on critical facts, and now seeks to do so again. The motion to amend should be denied because those actions have not been taken in good faith. *See*, *e.g.*, *Nicholson*, 42 F.4th at 200 (upholding denial of motion to amend when, among other things, plaintiff "changed substantive facts from one filing to the next to avoid dismissal") (quotation marks omitted).

## II.     The motion to amend and proposed amendments include new false and misleading statements that are designed to obscure prior false allegations.

In its motion to amend, plaintiff suggests that the amended complaint is a straightforward and timely response to a recent change in management at MIT. *See* ECF No. 13 at 2 ("The changes in the proposed Amended Complaint reflect the change in management control, the change from a derivative to a direct action, and the fact that this case was removed from the Circuit Court for Fairfax County to this Court."). That representation is misleading for multiple reasons.

---

[1]Plaintiff's Certification of Conference states: "On December 19, via email, undersigned counsel asked Timothy Clemente and counsel for Joshua Clemente whether they would consent to the relief requested herein. Both refused, without explanation, to consent." ECF No. 13 at 3. The Certification fails to mention a 30-minute phone call on December 13, during which defense counsel detailed its opposition to plaintiff's stated plan to fire Tim and amend the complaint.

**A. F2E did not suddenly learn that Tim Clemente was still MIT's president during recent discussions with defense counsel.**

F2E did not suddenly realize that Tim Clemente was still MIT's president just two weeks ago, as plaintiff suggested during the parties' Rule 16 conference. In fact, F2E affirmatively stated that Tim Clemente was MIT's president in its complaint, and it reiterated that fact when opposing the pending demurrer. Plaintiff questioned Tim's role only when Tim asked about his right to see MIT documents. Plaintiff then changed course and claimed that F2E could unilaterally fire Tim at any time and then amend the complaint.

Plaintiff moved to amend only when it was forced to address the implications of its conflicting claims. Plaintiff does not explain why it was acting in good faith when it made that decision months after filing the complaint, nor does it explain how its recent decision squares with language from MIT's operating agreement, quoted in the complaint, stating "[n]o person may act unilaterally on behalf of the LLC absent the approval of a majority of the Members." ECF No. 1-1 ¶ 18 (quoting §7(A) of MIT's Operating Agreement). More fundamentally, plaintiff does not explain why F2E brought this lawsuit in the first place if it could unilaterally terminate MIT's president at any time, as it now claims.

**B. The proposed amendments are not limited to changes made to "reflect MIT's recent change in management control," as plaintiff misleadingly suggests.**

The motion to amend suggests that only limited changes have been made in the proposed amended complaint, to "reflect the change in management control, the change from a derivative to a direct action, and the fact that this case was removed from the Circuit Court for Fairfax County to this Court when one of the defendants filed a counterclaim against MIT for patent infringement." ECF No. 13 at 2. But the amendments proposed by the plaintiff are broader than plaintiff admits. Plaintiff has not limited itself to amendments that "reflect the change in management control," as

plaintiff states in its motion to amend (*id*.). Instead, the proposed amendments include at least two unrelated changes designed to obfuscate some, though not all, of plaintiff's prior false allegations on key issues.

> **1. The proposed amended complaint adds a new false statement about F2E's knowledge of Josh Clemente's role in an effort to obscure plaintiff's prior false statement.**

The original complaint contains numerous allegations that are demonstrably false. One false statement that jumped out immediately is the allegation that "[u]nbeknownst to F2E," Josh Clemente held himself out "as MIT's Vice President of Engineering." ECF No. 1-1 ¶ 51. Numerous records show that allegation is false. Most notably, in a sworn declaration submitted to the USPTO just a few months ago, F2E's sole owner, Fahmi Alubbad, described Josh Clemente as "MIT's VP of Design and Engineering." Ex. E (Alubbad IPR declaration) ¶ 10. Mr. Alubbad also explained, again under penalty of perjury, that he attended a trade show with Josh Clemente in November 2017 where he distributed videos and brochures describing Josh Clemente as MIT's VP of Design and Engineering. *See* ECF 1-3 (J. Clemente Answer) ¶ 51 (discussing the Alubbad IPR declaration).

Counsel for Josh Clemente told plaintiff's counsel that Mr. Alubbad's declaration contradicted key allegations in the complaint just days after the complaint was served. *See* Ex. F (Nov. 8, 2023 email exchange with plaintiff's counsel following lengthy phone call). Josh Clemente also addressed that issue in his November 24, 2023 answer, which explained that F2E's owner, Fahmi Alubbad, stated "under penalty of perjury, that he attended a trade show with Joshua Clemente in 2017, and distributed dozens of copies of a brochure that described Joshua Clemente as MIT's VP of Design and Engineering." ECF 1-3 ¶ 51 (citing the Alubbad IPR declaration and supporting IPR exhibits).

Plaintiff took no action to correct that, or other, false statements in the complaint, however. Indeed, plaintiff continued to say it had no intention of amending the complaint even during the parties' Rule 26 conference on December 6, 2023. Now—in an amendment purportedly addressing only "the change in management control" at MIT—plaintiff seeks to smuggle in a new allegation designed to obfuscate one of its more glaringly obvious prior false statements.

The proposed amended complaint adds a new paragraph stating: "F2E discovered that Josh was holding himself out as MIT's Vice President of Engineering only after reviewing marketing materials Tim and/or Josh had printed for distribution at an industry trade show." ECF 13-3 ¶ 50. That new allegation is a transparent effort to plead around Mr. Alubbad's IPR declaration, which describes Josh Clemente as MIT's VP of Design and Engineering, and discusses Mr. Alubbad's attendance at a 2017 trade show, as well as his distribution of marketing material describing Josh Clemente as MIT's VP of Design & Engineering both before and after that trade show. *See* Ex. E (IPR Declaration) ¶ 10 (describing Josh Clemente as "MIT's VP of Design and Engineering"); *Id.* ¶¶ 19-27 (describing the November 2017 trade show that Mr. Alubbad attended on behalf of MIT).

The proposed amendment admits that F2E knew Josh Clemente was sometimes referred to as "MIT's Vice President of Engineering," but claims F2E learned about that "only after reviewing marketing materials Tim and/or Josh had printed for distribution at an industry trade show." ECF 13-3 ¶ 50. The new suggestion that F2E learned that information only when Fahmi Alubbad attended the November 2017 trade show described in his IPR declaration is also demonstrably false.

Numerous emails sent to and from Mr. Alubbad show that he described Josh as MIT's VP of Design and Engineering long before the November 2017 trade show discussed in his IPR declaration. Exhibit G, for example, is an email attaching a draft letter that Tim Clemente sent to

Fahmi Alubbad and Josh Clemente on September 9, 2015. The first sentence of the attached draft letter states: "Joshua Clemente, Vice President of Engineering and Design for Mission Integrated Technologies, LLC, is planning a business trip to Saudi Arabia[.]" Ex. G at 3. Mr. Alubbad received that email and replied to it multiple times without ever suggesting he was concerned about how Josh was described in the attached letter. *See* Ex. H (Fahmi Alubbad replies to Sept. 9, 2015 email from his atlantscorp@cox.net email address).

Mr. Alubbad sent a similar document directly to Tim and Josh Clemente on April 27, 2017. *See* Ex. I. That document is written largely in Arabic, but it clearly relates to a planned trip to Saudi Arabia on behalf of MIT. *Id.* at 2. The document includes the name "Mission Integrated Technologies" on the bottom right, with Joshua Clemente's name listed a few cells up, across from the title "VP Design and Engineering." *Id.* at 2.

These documents, and others like them, show F2E knew Josh Clemente was sometimes described as MIT's VP of Design and Engineering long before the November 2017 trade show discussed in Mr. Alubbad's recent IPR declaration. Defendants have not tried to hide these facts. Counsel for Josh Clemente told plaintiff's counsel that numerous communications with F2E's sole owner show F2E knew Josh Clemente was sometimes referred to as MIT's VP of Engineering and Design and indeed encouraged that. But instead of taking that information seriously and investigating the basis for that, and other, false allegations in the complaint, plaintiff's counsel put on blinders, and now seeks to kick the can down the road by adding a paragraph to the proposed amended complaint that obliquely responds to Mr. Alubbad's IPR declaration, without admitting the original allegation was false, or ensuring the new allegation has factual support.

Plaintiff's attempt to sneak a new false allegation into the amended complaint in order to obfuscate a prior false allegation is another indication that plaintiff is acting in bad faith. *See*

*Nicholson*, 42 F.4th at 198 (stating bad faith can include "outright lying, deceiving, playing unjustifiable hardball, [or] intentionally causing confusion").

**2. The proposed amended complaint also tries to sneak in a correction to false allegations regarding an NDA allegedly sent to Josh Clemente in 2013.**

Perhaps even more flagrantly, the proposed amended complaint also tries to walk back the false allegation that Josh Clemente either did, or should have, signed a non-disclosure agreement with MIT in June 2013—two months before MIT was even created. *See* ECF No. 1-1 ¶¶ 25, 34.

According to the complaint, "F2E agreed to allow Josh and [Ken] Fournier to assist Tim on the ARES design in reliance on representations by Tim that each of them would, and in fact did, sign MIT's standard nondisclosure and non-circumvention agreement[.]" *Id*. ¶ 25. Elsewhere, the complaint alleges the original NDA was "dated June 6, 2013." *Id.* ¶ 34. But that is impossible, since MIT did not even exist until August 2013, as Josh Clemente explained in his answer, which states he: "was unwilling to falsely state that he previously signed a non-disclosure agreement with MIT dated June 6, 2013, which is two months before MIT was even formed." ECF No. 1-3 ¶ 34.

Plaintiff apparently now concedes that point, but it will not say that directly. Instead, the proposed amended complaint seeks to change one word in the complaint to avoid again making a blatantly false statement while still obscuring the true facts.

Specifically, Paragraph 25 of the Complaint alleges "F2E agreed to allow Josh…to assist Tim on the ARES design in reliance on representations by Tim that each of them would, and in fact did, sign ***MIT's*** standard nondisclosure and non-circumvention agreement…" ECF No. 1-1 ¶ 25 (emphasis added). The proposed amended complaint changes one word in that paragraph, so that it instead reads: "F2E agreed to allow Josh…to assist Tim on the ARES design in reliance on representations by Tim that each of them would, and in fact did, sign ***a*** standard nondisclosure and non-circumvention agreement …." ECF No. 13-3 ¶ 23 (emphasis added).

11

Plaintiff tries to sneak that change in because it is now clear that the 2013 NDA at the center of this dispute was not an agreement with MIT at all. Instead, it was a proposed NDA with a separate entity owned by Fahmi Alubbad, called Atlantis Consultants. And while Tim Clemente signed an NDA with Atlantis Consultants on June 6, 2013, Josh Clemente did not. *See* ECF 1-1 at pp. 69-71 (Compl. Ex. B) (June 6, 2013 NDA with Atlantis Consultants signed by Fahmi Alubbad and Tim Clemente).

Plaintiff knows that Josh Clemente did not sign an NDA with MIT in June 2013, as he explained in his answer (*see* ECF No. 1-3 ¶ 34), but instead of addressing that head on, plaintiff again tries to sneak in a change to avoid repeating an obviously false statement without addressing the broader implications of that change. For example, MIT plainly cannot bring a bring a breach of contract claim against Josh Clemente based on an unsigned agreement with Atlantis Consultants. Yet the amended complaint still includes a breach of contract claim alleging "Josh entered into a non-disclosure and non-circumvention agreement with MIT in 2013...." ECF No.13-3 ¶ 146.

In short, plaintiff again seeks to sneak in an amendment to avoid a flat out lie they were caught in, while continuing to obfuscate the real facts. That proposed amendment is further evidence that plaintiff is acting in bad faith. *See Nicholson*, 42 F.4th at 200 (discussing evidence of bad faith based on "misleading and inconsistent assertions" made by the plaintiff).

### III.   Plaintiff is already using the proposed amended complaint to delay and obstruct discovery.

Finally, plaintiff is already using the proposed amended complaint to obstruct discovery and place unnecessary burdens on the defendants. Plaintiff has refused to answer Josh Clemente's pending discovery requests because those requests are directed to F2E, and the proposed amended complaint would remove F2E from this case. *See* Ex. A (Objections to Discovery Requests) at 1.

That objection alone will significantly prejudice the defendants given the tight discovery schedule here, particularly since nearly all of the facts at issue involve communications with F2E, which plaintiff now says cannot be obtained through discovery requests. Plaintiff's recent discovery objections, which it failed to preview during the parties Rule 16 conference last week, again speak to bad faith by the plaintiff.

Plaintiff's discovery objections demonstrate that it's belated motion to amend is already prejudicing the defendants. And if the motion to amend is granted, the amended complaint will impose significant further costs on the defendants as well, because it alters the nature of plaintiff's claims, and raises new issues and defenses. Defendants should not be forced to incur substantial additional costs and burdens because plaintiff failed to get basic facts straight before filing its complaint.

Plaintiff changed its position and sought leave to amend only after getting caught in a web of conflicting statements. Plaintiff failed to investigate the basic premise of its derivative suit before filing a complaint, and decided to change course only when defense counsel pointed out that plaintiff could not prevent MIT's president from reviewing MIT documents. The proposed amendment is not a minor ministerial change. It impacts the entire premise of the suit, and it is already being used to prevent the defendants from obtaining discovery.

## CONCLUSION

The motion to amend should be denied for the reasons set forth above. In the alternative, if plaintiff is given leave to amend, defendants ask that F2E not be dismissed as a party, so that the defendants can obtain discovery from F2E in response to pending and future discovery requests without incurring the additional costs involved in serving a subpoena on F2E.

December 27, 2023                                  Respectfully submitted,

                                                   /s/ Rebecca S. LeGrand
                                                   Rebecca S. LeGrand, VSB. No. 89859
                                                   LEGRAND LAW PLLC
                                                   1100 H Street NW, Suite 1220
                                                   Washington, DC 20005
                                                   (202) 587-5725
                                                   rebecca@legrandpllc.com

                                                   *Counsel for Defendant Joshua Clemente*

                                                   /s/ Timothy Clemente
                                                   Timothy G. Clemente
                                                   498 Fleshman Creek Road
                                                   Livingston, MT 59407
                                                   timclemente@aol.com

                                                   *Pro Se Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on December 27, 2023, this document was filed electronically through the

Court's CM/ECF system, providing service to the following counsel of record:

> Laurin H. Mills (VSB #79848)
> Brian P. Donnelly (VSB #82052)
> WERTHER & MILLS, LLC
> 2121 Eisenhower Ave., Suite 608
> Alexandria, VA 22314
> Laurin@werthermills.com
> bdonnelly@werthermills.com
>
> *Counsel for Plaintiff F2E Holdings LLC*

                                    /s/ Rebecca S. LeGrand
                                    Rebecca S. LeGrand, VSB. No. 89859