1

1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF VIRGINIA
2                  ALEXANDRIA DIVISION

3

4  MISSION INTEGRATED            )
   TECHNOLOGIES, LLC             )
5                                )
                                 )
6      VS.                       )   1:23-CV-1608  LMB/WBP
                                 )
7                                )   ALEXANDRIA, VIRGINIA
                                 )     APRIL 25, 2024
8  TIMOTHY G. CLEMENTE AND       )
   JOSHUA CLEMENTE               )
9  _____)

10

11

12

13

14 _____

15          **TRANSCRIPT OF PRETRIAL CONFERENCE**
       **BEFORE THE HONORABLE LEONIE M. BRINKEMA**
16            **UNITED STATES DISTRICT JUDGE**
   _____

17

18

19

20

21

22

23

24 **Proceedings reported by stenotype, transcript produced by**

25 **Julie A. Goodwin.**

2

**A P P E A R A N C E S**

FOR THE PLAINTIFF:
       WERTHER & MILLS, LLC
       By:  MR. LAURIN H. MILLS
       2121 Eisenhower Avenue, Suite 608
       Alexandria, Virginia  22314
       703.547.4693
       laurin@werthermills.com

       WERTHER & MILLS, LLC
       By:  MR. BRIAN P. DONNELLY
       2000 Tower Oaks Boulevard, Suite 200
       Rockville, Maryland  20852
       240.912.3034
       bdonnelly@werthermills.com


FOR THE DEFENDANT JOSHUA R. CLEMENTE:
       LEGRAND LAW PLLC
       By:  MS. REBECCA S. LEGRAND
       1100 H Street, NW, Suite 1220
       Washington, DC  20005
       202.587.5725
       rebecca@legrandpllc.com


FOR THE DEFENDANT TIMOTHY G. CLEMENTE:
       TROUTMAN PEPPER
       By:  MR. ANDREW HENSON
       1001 Haxall Point, Eleventh Floor
       Richmond, Virginia  23226
       804.697.1390
       andrew.henson@troutman.com


OFFICIAL U.S. COURT REPORTER:
       MS. JULIE A. GOODWIN, RPR
       United States District Court
       401 Courthouse Square
       Alexandria, Virginia  22314
       571.229.7074

3

1  (APRIL 25, 2024, 10:33 A.M., OPEN COURT.)

2          THE COURTROOM DEPUTY:  Civil Action Number

3  1:23-CV-1608, *Mission Integrated Technologies, LLC, et al.,*

4  *versus Clement, et al.*

5          Will counsel please note their appearances for the

6  record, beginning with plaintiff.

7          MR. MILLS:  Good morning, Your Honor.  Laurin Mills

8  and Brian Donnelly on behalf of the plaintiff, Mission

9  Integrated Technologies.

10          THE COURT:  Good morning.

11          MS. LE GRAND:  Good morning, Your Honor.  Rebecca Le

12  Grand on behalf of the defendant/counterclaimant Joshua

13  Clemente.

14          THE COURT:  Good morning.

15          MR. HENSON:  Good morning, Your Honor.  Andrew Henson

16  from Troutman Pepper on behalf of the defendant, Timothy

17  Clemente.

18          THE COURT:  All right.  Very good.

19          I just want to make sure.  There was still a, what

20  we call a gavel.  And you can't see gavels, but we can see

21  gavels on the docket for motions that have not been resolved.

22  And it's my understanding all the discovery motions have been

23  resolved in this case.  Is that correct?

24          MR. MILLS:  That's correct, Your Honor.

25          THE COURT:  All right.  That's fine.

4

1　　　　　All right.  This matter is on for final pretrial.

2　Have you-all filed your witness lists and exhibit lists and

3　exchanged your exhibits with each other?

4　　　　　MR. MILLS:  We have.

5　　　　　MR. HENSON:  We have.

6　　　　　THE COURT:  Okay.  And I think there were stipulations

7　in this case as well.  Is that correct?

8　　　　　MS. LE GRAND:  A few.

9　　　　　THE COURT:  All right.  A few.

10　　　　　All right.  Again, you heard me with the first two

11　cases, so I'll start with my favorite question, and that is,

12　have you-all made an effort to try to resolve this case?

13　　　　　MR. MILLS:  Your Honor, there was actually an effort

14　to resolve this case before, and I was never involved in it

15　with previous counsel, but it blew up over some issues.  We had

16　a mediation scheduled for January, but -- but it didn't go

17　forward.  And -- and so I think we --

18　　　　　THE COURT:  Have a seat while counsel is talking.

19　　(COMPLIES.)

20　　　　　MR. MILLS:  (Continuing)  -- yeah, I think we should

21　mediate it.  I think it's a good idea.  You know, we've had --

22　Judge Porter took over for Judge Anderson on this.  While we've

23　had a couple of discovery skirmishes, I don't think any --

24　counsel had any problem with him being a mediator.

25　　　　　And so in terms of setting a trial date, we ought

5

1  to allow a little time to try to get this done because I do

2  think this is the kind of case that could settle because it's

3  not just about money and patent.  There's relationship issues

4  in this case.

5          THE COURT:  Uh-huh.

6          MR. MILLS:  And it's a good vehicle for mediation.

7          THE COURT:  All right.  Let me ask you while you're on

8  your feet, Mr. Mills.  Is the plaintiff selling any of this

9  technology to the U.S. Department of Defense or is this all

10  more to local police agencies?

11          MR. MILLS:  It's to local -- the -- I'm not aware of

12  any DOD contracts, Your Honor, no.  He has sold it to the City

13  of Miami.  He has sold it in the United Arab Emirates.  He sold

14  it in Saudi Arabia and I think in Indonesia.  I'm not sure

15  about that.

16          THE COURT:  All right.  So are most of the sales

17  overseas, then, rather than domestically?

18          MR. MILLS:  For right now, the -- the overwhelming

19  majority have been overseas.

20          THE COURT:  All right.

21              And let me see.  Now, Mr. Henson, you represent

22  Tim, who is the father.  Right?

23          MR. HENSON:  I do, Your Honor, yes.

24          THE COURT:  All right.  Am I correct that he is still

25  a 20- or 25-percent shareholder with the plaintiff, or am I

Julie A. Goodwin, CSR, RPR

4/25/24  ~  Pretrial Conf.

6

1 wrong about that?

2        MR. HENSON:  Your Honor, he -- he was.  The majority

3 owner has since diluted his shares.  That's an issue that's

4 sort of peripheral to the case here, running parallel to the

5 case, but not immediately before the Court.

6        THE COURT:  Except that if the plaintiff were to,

7 let's say, win and get a nice, fat judgment, then ironically

8 your client would get some financial benefit from that.  I

9 mean, it might -- it might not net to be a profit, but I'm just

10 curious.  He still has some kind of ownership interest in the

11 plaintiff?

12        MR. HENSON:  Yes, Your Honor.  It's been diluted down

13 to, I think, 6 percent or 9 percent, something in that range.

14        THE COURT:  All right.

15        MR. HENSON:  A lot smaller number.

16        THE COURT:  And what is Mister -- there's a third

17 party.  Is it Fournier?  He had a couple of shares of stock, or

18 did he not have any stock interest?

19        MR. HENSON:  He has an economic interest, Your Honor.

20 He's also been diluted by the majority owner.

21        THE COURT:  All right.  All right.

22           What's the defense -- what's your client's position

23 on trying to settle this case?

24        MR. HENSON:  Your Honor, we're -- we're always

25 interested in settling.  I think our -- in full disclosure,

7

 1  our -- we think this will be difficult.  We've made entreaties

 2  in the course of this litigation to settle.  We understood the

 3  plaintiff was not willing to -- to go to mediation previously.

 4          In the last couple of months when we had this

 5  discussion, we did -- we got a very high demand back, which,

 6  you know, we believe to be totally unjustified.  You know, if

 7  anything, you know, the defendants are the aggrieved parties

 8  here and -- I mean, we would love to get this resolved.

 9          THE COURT:  All right.  That's fine.

10          Let me hear, then, from Ms. LeGrand.

11          MS. LE GRAND:  Good morning, Your Honor.

12          Largely, I would follow what Mr. Henson said.  In

13  the abstract, I am always very happy to resolve a case, but

14  I've been involved longer and been involved in multiple rounds

15  of settlement negotiations where my client attempted to agree

16  to everything the plaintiff demanded.  And as -- as Mr. Mills

17  hinted at here, there's a grudge, so there's not an

18  economically rational outcome that we can get to.  And I've

19  been willing to despite agreeing to everything that --

20          THE COURT:  Okay.

21          MS. LE GRAND:  -- was demanded.

22          THE COURT:  Unfortunately, I mean, I sometimes call

23  these, you know, corporate divorces.

24          MS. LE GRAND:  Yes.

25          THE COURT:  There are hard feelings.  And the

8

1  difficulty is that the parties are not approaching the case

2  with a rational, economic calculus that they should use in

3  figuring out how to handle the dispute, which is why a really

4  good, strong mediator can really sometimes help that, resolve

5  those issues.

6         And frankly, I don't think any of your clients are

7  here.  I mean, sometimes I recognize that the real problem

8  sometimes is between counsel and the client.  And so having a

9  third party neutral, explaining directly to the client what --

10  what the realities of the litigation are can be very helpful.

11        And so, again, in your -- in terms of your

12  client -- so he's an engineer.  Is --

13         MS. LE GRAND:  Correct.

14         THE COURT:  -- that correct?

15         Does he have his own business now?  Is he --

16         MS. LE GRAND:  Yes, he's working in Texas.  He has his

17  own startup.  And he has -- he has no hard feelings.  He has

18  just tried to have peace throughout, has been his position.  So

19  all -- all of his -- the only thing we request, Your Honor, has

20  been a release agreement so he can move on with life.

21         THE COURT:  All right.  Let me ask you this though.

22  In his current business --

23         MS. LE GRAND:  Yeah.

24         THE COURT:  -- is he producing a product that's

25  similar to what he --

9

1          MS. LE GRAND:  No.  He's in a completely different

2   industry now.

3          THE COURT:  So he's not competing at all?

4          MS. LE GRAND:  Correct.

5          THE COURT:  So he has this patent which --

6          MS. LE GRAND:  Correct.

7          THE COURT:  -- I know you filed a counterclaim for

8   patent infringement, so I'm assuming any settlement would

9   include your client dropping that claim.

10          MS. LE GRAND:  We offered that honestly from the

11  get-go.  Though it is a very real claim and they have willfully

12  infringed, but we understand that economic reality and that is

13  something we've been willing to do from the outset, but not to

14  just leave us -- it is a very real patent.  My client spent a

15  huge amount of time inventing, so it's a -- important

16  invention.  So he does care about the patent, but, yes, we've

17  tried that.

18          THE COURT:  All right.

19          And obviously there have been transaction costs

20  that he has incurred --

21          MS. LE GRAND:  Yes.

22          THE COURT:  -- and you're spending time.  We assume

23  that's an issue for settlement at the settlement table, or is

24  that not an issue?

25          MS. LE GRAND:  If we -- it will certainly be an

10

1   issue that I think we're going to show we're entitled to

2   attorney's fees if we have to go to trial, but at settlement we

3   would be very economically rational.

4               THE COURT:  It's negotiable.

5               MS. LE GRAND:  From my side.  I'm speaking just for my

6   client.  He's very economically rational.  That has not helped

7   before, but he is.

8               THE COURT:  All right.  Now, the discovery is over, so

9   I'm assuming you've had full discovery on the issue of damages.

10              MS. LE GRAND:  Interesting question there.  I think we

11  do sufficiently understand each other's damages position to

12  certainly mediate, I think, and discovery has closed.  As all

13  the parties know, we took a 30(b)(6) deposition of MIT, of

14  plaintiff's corporate representative and in his personal

15  capacity, Mr. Alubbad, last week, which was the first -- the

16  earliest we could really do it given the holidays.  He's a

17  practicing Muslim (unintelligible), so we --

18              THE REPORTER:  Can you slow down.  I'm sorry.  He's a

19  practicing Muslim, what?

20              MS. LE GRAND:  That really wasn't even relevant.  We

21  were -- we were respecting holidays, so we were unable to -- we

22  took his deposition.  There were numerous topics he was

23  identified to be the corporate representative on that -- and he

24  could not answer questions, in our view, I'm sure.  But I think

25  at this stage if -- I would see our next step, absent

11

1  settlement, which would be wonderful, as summary judgment.  And

2  we think there's evidence it should probably be excluded

3  because --

4           THE COURT:  All right.  Let me hear -- Mr. Mills, put

5  you back in the hot seat.

6           What's the -- what other damages are you claiming

7  in this case?

8           MR. MILLS:  That they keep -- it's the -- the cost of

9  getting back all the confidential information that was

10 disclosed.

11          Here -- here's where the settlement broke down on,

12 is that the way the divisional responsibilities between the two

13 parties were is that my client put up the money and he was

14 going to be the international sales guy, and that's what he was

15 doing.  And Timothy Clemente was the -- I mean, the president

16 was supposed to be the day-to-day guy running things.  He

17 really wasn't.  He didn't do that, and that's part of the

18 breach of an operating agreement and the contract claim.  So

19 other people had to be hired to come in and do things that he

20 was supposed to be doing.

21          And then at the same time in his -- you know, he

22 gets his son enlisted to -- to come in.  Doesn't put him under

23 an NDA; doesn't put him under a -- you know, a work-for-hire.

24          THE COURT:  I appreciate that --

25          MR. MILLS:  Yeah.

1          THE COURT:  -- but tell me where are the damages.  If

2    the case goes to trial and you're going to argue the case to a

3    jury, has the -- has your client actually lost any sales of the

4    device --

5          MR. MILLS:  Oh, I --

6          THE COURT:  -- based upon any conduct of either the

7    two --

8          MR. MILLS:  We are --

9          THE COURT:  -- defendants?

10         MR. MILLS:  -- not claiming lost sales.  We're

11   claiming the transaction costs of having to round up and

12   protect the IP and get his IP back.  The IP is now in the hands

13   of Joshua Clemente.

14         THE COURT:  Well, when you say that, is that the

15   patent or is it --

16         MR. MILLS:  It's the -- it's the patent and all the

17   confidential information.  And through the course of discovery,

18   including just in the last couple of weeks, we've gotten a

19   substantial subset of that back, at great cost, and some of

20   that is part of the damage issue.  And the other part of the

21   damages is pursuing it because there's a prevailing party

22   clause under both the operating agreement, and there's a clear

23   business conspiracy here because the Clementes and secret

24   patented this thing and then used the patent when they got it

25   to try to leverage Mr. Alubbad to get a bigger percentage of

13

1  the company.  And so -- so there's treble damages and fees on

2  top of that.

3          THE COURT:  All right.  Well, again, it is a case that

4  I think has potential for settlement.  And at this point,

5  despite, you know, the hard feelings and the argument, it comes

6  down to the raw evidence, and so whether or not the evidence is

7  there.

8          So, I don't know what came in through discovery.

9  If in fact the depositions do not support, you know, the damage

10 theory, then there's a real problem.

11         So, what I'm going to do is we're going to set a

12 trial date.  I'm going to give you a little bit more time than

13 I did the other two cases.  I put this one last because I

14 thought this would be the more complex of the -- of the cases.

15 But you should -- again, because our magistrate judges are all

16 very busy, if you want to use the services of Judge Porter, you

17 need to get with him right away and get on his calendar.

18         This case -- I assume this case might be a week.

19 I'm not sure.  We move cases very quickly.

20         How is the week of July 8 for you-all?

21     MR. MILLS:  That's fine for the plaintiffs.

22     MR. HENSON:  That's fine as well.

23     THE COURT:  Oh, that's so nice to hear.  All right.

24 That's great.

25         All right.  So we start at 10:00 o'clock with a

14

1    jury, and I will seat again a jury of eight.  We don't have any

2    alternates, so six is the minimum we need for a civil jury.

3            You heard me previously indicate that I would like

4    any proposed jury instructions to be as much as possible agreed

5    to, and those will be filed one week before the start of the

6    trial.  And then if there are individual instructions that you

7    could not agree upon, so each side might have some additional

8    ones they're filing, you would file those at the same time.  I

9    would want any objections and the basis for those objections

10   filed before the start of trial, so we could be looking at them

11   as the case starts to move on.

12           Do you anticipate all the witnesses being live or

13   are we going to have to work on some technology for remote

14   testimony?

15        MR. MILLS:  The answer is there's three potential

16   witnesses beyond the subpoena power of the Court.  Two of them

17   were we've deposed and we just -- we'll have somebody read the

18   transcript.  It's relatively short depositions.

19           There's a third witness, Mr. Fournier, who you

20   brought up, who we have subpoenaed.  We subpoenaed him on

21   January the 18th.  Gave him three weeks to respond.  He did not

22   respond.  We have a contempt motion pending in Los Angeles.

23   That's not scheduled to be heard until May 7th because they

24   don't do things as fast there as you do here.

25        THE COURT:  Uh-huh.

15

1      MR. MILLS:  And so I don't know how Mr. Fournier -- we

2  may get nothing from him, or even what we get from him we might

3  not find useful.  That's the only -- that's a wild card of a

4  third-party witness.

5      THE COURT:  Okay.  And how about for the defendants?

6  Are there any -- so in other words, at the present time almost

7  all witnesses will be either live in court or their prior

8  deposition testimony will be read into the record.  You're not

9  playing video versions of that deposition.

10      MR. HENSON:  I believe, Your Honor --

11    (COMES TO LECTERN.)

12      MR. HENSON:  Your Honor, there is a -- the corporate

13  deposition of the plaintiff was taken, and that was recorded by

14  video.  And I think defense intends to display part of that as

15  a designated transcript for testimony.

16      THE COURT:  Wait.  If he's here live, I will tell you

17  that I'm going to require you to put on the testimony using him

18  as a live witness.  If the deposition clearly is, you know,

19  inconsistent with what he has said, then you may either play it

20  or do the proper foundation by just asking him to set it up.

21  All right?  But I can tell you juries much prefer hearing from

22  the witness live.  It's much better, so.

23         But other than that, all of your witnesses you

24  anticipate will be live?

25      MR. HENSON:  Other -- other than the corporate

Julie A. Goodwin, CSR, RPR

4/25/24  ~  Pretrial Conf.

16

1   testimony, yes, Your Honor.

2          THE COURT:  All right.  And is that the same for your

3   client?

4          MS. LE GRAND:  Yes, Your Honor.

5          THE COURT:  All right.  Good.

6          All right.  Are there any other matters that we

7   need to set?

8          In terms of a date, if there are motions, summary

9   judgment motions, all the Fridays in June I am available, as

10  well as the Friday of July 5, so there's no problem with

11  scheduling.

12         You know, make sure it's available to opposing

13  counsel and we can hear arguments.  The same way if there are

14  motions in limine or pretrial matters, you can get them noticed

15  for any Friday on that time frame at 10:00 o'clock.

16         MR. HENSON:  Your Honor, if I may?

17         THE COURT:  All talk is from the lectern.  That's

18  where the microphone is.

19         MR. HENSON:  And, Your Honor, the -- there's a summary

20  judgment schedule briefing.  It's already been entered in the

21  court at the outset.  It's scheduled to close at the end of

22  May.

23         Would it -- would it be appropriate to go ahead and

24  put the summary judgment motion on the -- notice it up for

25  hearing at the earliest opportunity?

Julie A. Goodwin, CSR, RPR

4/25/24  ~  Pretrial Conf.

17

1       THE COURT:  Whoever files the motion for summary

2   judgment should then also have a notice when you want to argue.

3   Any of the Fridays that I've indicated in June are available at

4   10:00 o'clock.  Just make sure Mr. Mills is available for that

5   particular Friday.  All right?

6       MR. HENSON:  Okay.  Thank you.

7       THE COURT:  And any -- do it in such a way that --

8   make sure that the reply brief is in chambers a couple of days

9   before the hearing.  Otherwise, if I'm reading the reply brief

10  Thursday night for a Friday morning proceeding, I'm not going

11  to get a chance to evaluate it.  All right?

12      MR. HENSON:  Understood.

13      THE COURT:  All right.

14          Mr. Mills.

15      MR. MILLS:  There's just one other thing that I --

16      THE COURT:  Yeah.

17      MR. MILLS:  -- want to bring up to the Court.  Count

18  two of our complaint is the trade secret claim.  We acknowledge

19  we can't prove that, and we're going to dismiss that.  I just

20  wanted to apprise the Court of that.  We -- there's lots of

21  confidential information, but we can't support that it arises

22  to the trade secret levels.

23      THE COURT:  Well, I'm thrilled that you're doing it

24  earlier than later.  It really is annoying when we get into the

25  beginning of a trial and then counsel for one side says, Oh,

18

 1  you know, we're not pursuing that theory.  That's great.  Why

 2  don't you get that motion to dismiss the count as quickly as

 3  possible.

 4          MR. MILLS:  Thank you.

 5          THE COURT:  All right?

 6          MR. MILLS:  Yes, ma'am.

 7          THE COURT:  All right.  Anything further?  No?  Then

 8  we'll recess Court to await the decision of the jury.

 9          THE LAW CLERK:  All rise.

10              (PROCEEDINGS CONCLUDED AT 10:50 A.M.)

11                          -oOo-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Julie A. Goodwin, CSR, RPR

4/25/24  ~  Pretrial Conf.

19

1  UNITED STATES DISTRICT COURT    )

2  EASTERN DISTRICT OF VIRGINIA    )

3

4         I, JULIE A. GOODWIN, Official Court Reporter for

5  the United States District Court, Eastern District of Virginia,

6  do hereby certify that the foregoing is a correct transcript

7  from the record of proceedings in the above matter, to the best

8  of my ability.

9         I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action in

11  which this proceeding was taken, and further that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14         Certified to by me this 9TH day of MAY, 2024.

15

16

17

18         __/s/_____
          JULIE A. GOODWIN, RPR
19         Official U.S. Court Reporter
          401 Courthouse Square
20         Ninth Floor
          Alexandria, Virginia  22314

21

22

23

24

25