## **Introduction to the Final Charge—Province of the Court and of the Jury**

Members of the Jury:

Now that you have heard all of the evidence that is to be received in this trial and each of the arguments of counsel it becomes my duty to give you the final instructions of the Court as to the law that is applicable to this case. You should use these instructions to guide you in your decisions.

All of the instructions of law given to you by the Court—those given to you at the beginning of the trial, those given to you during the trial, and these final instructions—must guide and govern your deliberations.

It is your duty as jurors to follow the law as stated in all of the instructions of the Court and to apply these rules of law to the facts as you find them to be from the evidence received during the trial.

Counsel have quite properly referred to some of the applicable rules of law in their closing arguments to you. If, however, any difference appears to you between the law as stated by counsel and that as stated by the Court in these instructions, you, of course, are to be governed by the instructions given to you by the Court.

You are not to single out any one instruction alone as stating the law, but must consider the instructions as a whole in reaching your decisions.

Neither are you to be concerned with the wisdom of any rule of law stated by the Court. Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base any part of your verdict upon any other view or opinion of the law than that given in these instructions of the Court just as it would be a violation of your sworn duty, as the judges of the facts, to base your verdict upon anything but the evidence received in the case.

You were chosen as jurors for this trial in order to evaluate all of the evidence received and to decide each of the factual questions presented in this case.

In resolving the issues presented to you for decision in this trial you must not be persuaded by bias, prejudice, or sympathy for or against any of the parties to this case or by any public opinion.

Justice—through trial by jury—depends upon the willingness of each individual juror to seek the truth from the same evidence presented to all the jurors here in the courtroom and to arrive at a verdict by applying the same rules of law as now being given to each of you in these instructions of the Court.

JURY INSTRUCTION NO. 2

## **Note-taking**

During this trial, I permitted you to take notes. Many courts do not permit note-taking by jurors, and a word of caution is in order. There is always a tendency to place undue importance to matters which one has written down. Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, you are instructed that your notes are only a tool to aid in your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence. Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be your greatest asset when it comes time to deliberate and render a decision in this case.

Moreover, you are coequal judges of the facts and each juror's memory of and opinion about the evidence is worthy of consideration by all the other jurors. That a juror may have taken extensive notes does not mean that his or her memory or opinion is worthy of more consideration than the memory or opinion of a juror who took few or no notes.

JURY INSTRUCTION NO. 3

## **Judging the Evidence**

A juror should consider the evidence in a trial as a reasonable and careful person would deal with any very important question that must be resolved by examining facts, opinions, and evidence. You are expected to use your good sense in considering and evaluating the evidence in the case. Use the evidence only for those purposes for which it has been received and give the evidence a reasonable and fair construction in the light of your common knowledge of the natural tendencies and inclinations of human beings.

Keep constantly in mind that it would be a violation of your sworn duty to base a verdict upon anything other than the evidence received in the case and the instructions of the Court.

JURY INSTRUCTION NO. 4

**Evidence Received in the Case—Inferences Permitted**

The evidence in this case consists of the sworn testimony of the witnesses—regardless of who may have called them—all exhibits received in evidence—regardless of who may have produced them—all facts which may have been agreed to or stipulated— and all facts and events which may have been judicially noticed.

Any proposed testimony or proposed exhibit to which an objection was sustained by the Court and any testimony or exhibit ordered stricken by the Court must be entirely disregarded by you. Anything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Questions asked by a lawyer for either party are not evidence. If a lawyer asks a question of a witness which contains a statement of fact you may not consider the lawyer's statement as any evidence of that fact. Only a witness's answer to a question may be considered as evidence. Objections, statements, and arguments of counsel also are not evidence in the case.

You are to base your verdict only on the evidence received in the case. In your consideration of the evidence received, however, you are not limited to the bald statements of the witnesses or to the bald assertions in the exhibits. In other words, you are not limited solely to what you see and hear as the witnesses testify or as the exhibits are admitted. Instead, you are permitted to draw from the facts which you find have been proved such reasonable inferences as you feel are justified in the light of your experience and common sense. Inferences are simply deductions or conclusions which reason and common sense lead the jury to draw from the evidence received in the case.

JURY INSTRUCTION NO. 5

## Objections and Rulings

Testimony and/or an exhibit can be admitted into evidence during a trial only if it meets certain criteria or standards. It is the sworn duty of the attorney on each side of a case to object when the other side offers testimony or an exhibit which that attorney believes is not properly admissible under the rules of law. Only by raising an objection can a lawyer request and then obtain a ruling from the Court on the admissibility of the evidence being offered by the other side. You should not be influenced against an attorney or his or her client because the attorney has made an objection.

Do not attempt, moreover, to interpret my rulings on objections as somehow indicating how I think you should decide this case. I am simply making a ruling on a legal question regarding that particular piece of testimony or exhibit.

## Court's comments to counsel

It is the duty of the Court to admonish an attorney who, out of zeal for his or her cause, does something which I feel is not in keeping with the rules of evidence or procedure.

You are to draw absolutely no inference against the side to whom an admonition of the Court may have been addressed during the trial of this case.

## Court's questions to witnesses

During the course of a trial, I occasionally asked questions of a witness. Do not assume that I hold any opinion on the matters to which my questions may relate. The Court may ask a question simply to clarify a matter—not to help one side of the case or hurt the other side.

JURY INSTRUCTION NO. 6

## Direct and Circumstantial Evidence

There are two types of evidence which are generally presented during a trial: direct evidence and circumstantial evidence. Direct evidence is the testimony of a person, such as an eyewitness, who asserts or claims to have actual knowledge of a fact. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact.

An example of circumstantial evidence is the following: You leave your house at noon on a cold February day. Your front yard is bare at that time. It starts to snow, you return at 5:00 p.m. and see a footprint in the snow that now covers your yard. From the facts that you left your home at noon, returned at 5:00 p.m., see the footprint and know from common experience that human beings are associated with footprints, you can infer that there was a person in your yard sometime between noon and 5:00 p.m. If you had actually seen a person, that would be direct evidence of that fact.

The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case in making your decisions.

JURY INSTRUCTION NO. 7

## **Quantity of Evidence**

Your decision on the facts of this case should not be determined by the number of witnesses testifying for or against a party or by the number of exhibits introduced by one side or the other. You should consider all the facts and circumstances in evidence to determine which of the witnesses you choose to believe or not believe and which of the exhibits have more or less value. You may find that the testimony of a smaller number of witnesses on one side is more credible than the testimony of a greater number of witnesses on the other side, or that one or two exhibits may have more significance to your evaluation of the case as against numerous exhibits that you find have less significance.

To sum up this instruction: always consider the quality of the evidence rather than the quantity of the evidence.

## JURY INSTRUCTION NO. 8

### <u>Credibility of Witnesses—Generally</u>

You, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to testify in this case and only you determine the importance or the weight, if any, that their testimony deserves. After making your assessment concerning the credibility of a witness, you may decide to believe all of that witness's testimony, only a portion of it, or none of it.

In making your assessment of that witness you should carefully scrutinize all of the testimony given by that witness, the circumstances under which each witness has testified, and all of the other evidence which tends to show whether a witness, in your opinion, is worthy of belief. Consider each witness's intelligence, motive to falsify, state of mind, and appearance and manner while on the witness stand. Consider the witness's ability to observe the matters as to which he or she has testified and consider whether he or she impresses you as having an accurate memory or recollection of these matters. Consider also any relation a witness may bear to either side of the case, the manner in which each witness might be affected by your verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness or between the testimony of different witnesses may or may not cause you to disbelieve or discredit such testimony. Two or more persons witnessing an incident or a transaction may simply see or hear it differently. Innocent mis-recollection, like failure of recollection, is not an uncommon human experience. In weighing the effect of a discrepancy, however, always consider whether it pertains to a matter of importance or an insignificant detail and consider whether the discrepancy results from innocent error or from intentional falsehood.

After making your own judgment or assessment concerning the believability of a witness, you can then attach such importance or weight to that testimony, if any, that you feel it deserves.

JURY INSTRUCTION NO. 9

**<u>Impeachment—Inconsistent Statement or Conduct</u>**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something, or has failed to say or do something, that is inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves.

If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

An act or omission is "knowingly" done, if the act is done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

JURY INSTRUCTION NO. 10

**<u>Opinion Evidence—The Expert Witness</u>**

The rules of evidence ordinarily do not permit witnesses to testify as to their own opinions or their own conclusions about important questions in a trial. An exception to this rule exists as to those witnesses who are described as "expert witnesses." An "expert witness" is someone who, by education or by experience, may have become knowledgeable in some technical, scientific, or very specialized area. If such knowledge or experience may be of assistance to you in understanding some of the evidence or in determining a fact, an "expert witness" in that area may state an opinion as to a matter in which he or she claims to be an expert.

You should consider the expert opinion received in evidence in this case and give it such weight, if any, as you may think it deserves. You should consider the testimony of an expert witness just as you consider other evidence in this case. If you should decide that the opinion of an expert witness is not based upon sufficient education or experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you conclude that the opinion is outweighed by other evidence, you may disregard the opinion in part or in its entirety.

As I have told you several times, you—the jury—are the sole judges of the facts of this case.

JURY INSTRUCTION NO. 11

**<u>Jury's Recollection Controls</u>**

If any reference by the Court or by counsel to matters of testimony or exhibits does not coincide with your own recollection of that evidence, it is your recollection which should control during your deliberations and not the statements of the Court or of counsel.

You are the sole judges of the evidence received in this case.

JURY INSTRUCTION NO. 12

## **Overview of the Case**

Patent law gives the owner of a valid patent the right to exclude others from importing, making, using, offering to sell, or selling the claimed invention within the United States during the term of the patent. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent. Joshua Clemente alleges that the ARES infringes the '677 patent. MIT does not dispute that the ARES infringes the claims in the '677 patent, but MIT alleges that it is not liable to Joshua Clemente because the '677 patent is invalid. If you find that MIT has proven by clear and convincing evidence that any claim in the '677 patent is invalid, then Joshua Clemente is not entitled to recover for infringement as to that claim. On the other hand, if you find that any or all claims in the '677 patent are valid, then you will need to determine what, if any, damages to award to Joshua Clemente and also whether MIT's infringement was willful.

JURY INSTRUCTION NO. 13

## **Invalidity Must be Proven by Clear and Convincing Evidence**

MIT contends that all of the asserted claims in the '677 patent are invalid. MIT must prove by clear and convincing evidence that a claim is invalid.

Clear and convincing evidence is a more exacting standard than proof by a preponderance of the evidence, where you need believe only that a party's claim is more likely true than not true. On the other hand, "clear and convincing" proof is not as high a standard as the burden of proof applied in criminal cases, which is proof beyond a reasonable doubt.

Clear and convincing proof leaves no substantial doubt in your mind. It is proof that establishes in your mind, not only that the proposition at issue is probable, but also that it is highly probable. It is enough if the party with the burden of proof establishes his claim beyond any "substantial doubt"; he does not have to dispel every "reasonable doubt."

JURY INSTRUCTION NO. 14

**Invalidity of Independent and Dependent Claims**

There are two types of claims in the '677 patent. One type is called an independent claim. Claims 1 and 17 are independent claims. The other type of claim is called a dependent claim. Claims 2 through 16 are dependent claims.

An independent claim does not refer to any other claim of the patent. For example, Claim 1 is an independent claim. An independent claim must be read separately from the other claims to determine the scope of the claim.

A dependent claim refers to at least one other claim in the patent. For example, Claim 2 is a dependent claim because it refers to Independent Claim 1. Specifically, Claim 2 states, "The vehicle-mounted access system of claim 1, further comprising an inclinable access handrail positioned along to and pivotally attachable to the inclinable access structure." Claim 3, which states, "The vehicle-mounted access system of claim 2, wherein the inclinable access handrail is configured to extend into a deployed position by a plurality of linkages," depends on Claim 2, which means it also depends on Claim 1.

You must evaluate the validity or invalidity of each asserted claim separately. Even if an independent claim is invalid, that does not mean that the dependent claims that depend from it are automatically invalid. You must decide the issue of validity or invalidity on a claim-by-claim basis; however, if you find that a dependent claim is invalid, then you must find that the independent claim and any other dependent claims that the invalid claim is dependent on are also invalid. So, for example, if you were to find dependent Claim 3 invalid, you would necessarily also have to find Claims 1 and 2 invalid because all of the elements described in Claims 1 and 2 are included in Claim 3; in other words, Claim 3 depends on Claims 1 and 2.

JURY INSTRUCTION NO. 15

**The On-Sale Bar**

MIT contends that all the claims of the '677 patent are invalid because the invention defined in those claims was on sale more than one year before Joshua Clemente filed the provisional patent application that led to the '677 patent. A patent claim is invalid if an embodiment of the claimed invention was both (1) the subject of a commercial sale or offer for sale; and (2) ready for patenting more than one year before the effective filing date of the patent, which in this case is November 20, 2018.

A commercial offer for sale was made if another party could make a binding contract by simply accepting the offer. An invention was subject to an offer for sale if the claimed invention was embodied in an actual product and that product was commercially sold or offered for sale. It is not required that a sale was actually made, nor that the terms of the sale disclose the details of the invention.

The invention also must have been ready for patenting at the time of the sale or offer for sale. The claimed invention is ready for patenting when there is reason to believe it would work for its intended purpose. An invention is ready for patenting either when it is reduced to practice or when the inventor has prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person of ordinary skill in the art to practice the invention. The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the claimed invention as of the time of the effective filing date.

An invention is reduced to practice when it has been (1) constructed or performed within the scope of the patent claims, and (2) determined that it works for its intended purpose.

JURY INSTRUCTION NO. 16

**Prior Art in Printed Publication**

MIT also contends that all the claims in the '677 patent are invalid because the invention defined in those claims was described in a printed publication before the critical date of November 20, 2017.

In this case, a patent claim is invalid if, before November 20, 2017, it appeared in a printed publication or was maintained in some tangible form, such as a video or brochure, and must have been sufficiently accessible to persons interested in the subject matter of its contents. Something is publicly accessible if it was distributed or otherwise made available such that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence could locate it. It is not necessary for the printed publication to have been available to every member of the public.

The disclosure of the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation. That means the disclosure was "enabling." In determining whether the disclosure is enabling, you should consider what would have been within the knowledge of a person of ordinary skill in the art as of November 20, 2017, and you may consider evidence that sheds light on the knowledge such a person would have had.

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the claimed invention as of the time of the effective filing date.

## Damages

The fact that you are being instructed on damages does not mean that the Court believes that Joshua Clemente should win this case. The instructions about damages are for your guidance, only in the event you find in favor of Joshua Clemente. You will need to address damages only if you find that one or more of the asserted claims are valid because MIT concedes that it infringes the claims in the '677 patent.

Damages cannot be speculative, but must be based on evidence. Joshua Clemente must prove each element of his damages—including the amount of the damages—by a preponderance of the evidence. To prove "by a preponderance of the evidence" means by evidence, which as a whole shows that the fact sought to be proved is more probable than not. In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true. This standard does not require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case. In determining whether any fact in issue has been proved by a preponderance of the evidence, unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

Any damages must be in an amount adequate to compensate Joshua Clemente only for the infringement of his patent. He is not entitled to damages for anything other than the infringement of his patent. The purpose of a damages award is to put Joshua Clemente in about the same financial position he would have been in if the infringement had not happened. But the damages award cannot be less than a reasonable royalty. You may not add anything to the amount of

damages to punish an accused infringer or to set an example. You also may not add anything to the amount of damages for interest.

## **Types of Damages**

While there are many types of damages that may be recovered in patent litigation, Joshua Clemente has limited his claim to what is known as a "reasonable royalty." A reasonable royalty is the amount that someone wanting to use the patented invention would have agreed to pay to the patent owner and that the patent owner would have accepted just before infringement began.

A reasonable royalty is the royalty that would have resulted from a hypothetical license negotiation between Joshua Clemente and MIT. Of course, we know that they did not agree to a license and royalty payment. But, to decide on the amount of reasonable royalty damages, you should assume that the parties did negotiate a license just before the infringement began. This is why it is called a "hypothetical" license negotiation.

You should assume that both parties to the hypothetical negotiation understood that the patent was valid and infringed and both were willing to enter into a license just before the infringement began. You should also assume that the parties had full knowledge of the facts and circumstances surrounding the infringement at the time of the hypothetical negotiation.

JURY INSTRUCTION NO. 19

**Date Damages Begin**

Patent infringement damages in this case begin on the date that you find that MIT infringed the '677 patent after it issued.  The patent issued on November 16, 2021.  That is also the date that a hypothetical negotiation would have taken place for the purpose of calculating a reasonable royalty.

JURY INSTRUCTION NO. 20

**Relevant Factors for Determining a Reasonable Royalty**

Reasonable royalty damages are calculated by determining a reasonable royalty rate (if one is proved) and multiplying that rate against a royalty base (the dollar amount of infringing sales revenue or profits depending on what you find the parties would have negotiated). Joshua Clemente has the burden to establish both a reasonable royalty rate and the applicable royalty base by a preponderance of the evidence. If you find there was insufficient evidence presented to determine either a reasonable royalty rate, or the appropriate royalty base (or both), you may award only a nominal royalty of one dollar.

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors:

1. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

2. The duration of the patent and the term of the license.

3. The established profitability of the product made under the '677 patent; its commercial success; and its popularity.

4. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

5. The nature of the patented invention, and the benefits to those who have used the invention.

6. The extent to which MIT has made use of the invention; and any evidence that shows the value of that use.

7. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

8. The amount that a licensor and a licensee (such as MIT) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been

willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

9. Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

## **The Royalty Base**

United States patent law does not operate outside the United States.  Therefore, you are not permitted to include foreign sales revenue as part of the applicable royalty base.  It is a factual issue where a sale took place.  Where the majority of activities underlying a sales transaction occurred outside the United States, it is not appropriate to include such sales in the royalty base.

Factors you may consider in determining where a sale took place include (1) where transfer of title to the property occurred; (2) where the most substantial sales activity took place; (3) where the property was delivered; (4) where the final formation of the sales contract occurred; and (5) where the infringing product was manufactured.  Pricing and contracting negotiations in the United States alone do not constitute a sale within the United States.

## **Willful Infringement**

If you find that one or more claims in the '677 patent are valid and were therefore infringed by MIT, you must also determine whether MIT's infringement of that claim was willful.

To show that MIT's infringement was willful, Joshua Clemente must prove by a preponderance of the evidence that MIT knew of the '677 patent and deliberately or intentionally infringed at least one asserted claim of the patent. You may not find that MIT's infringement was willful merely because MIT knew about the patent, but you must consider the totality of all the evidence presented during the trial to determine whether there was deliberate or intentional infringement.

For example, in determining whether any infringement was willful, you may consider whether MIT took actions based on a reasonable belief that the patent was not valid or that Joshua Clemente would not assert the patent against MIT.

If you determine that any infringement was willful, you may not allow that decision to affect the amount of any damages award you give for infringement.

**Verdict—Election of Foreperson—Duty to Deliberate—Unanimity—Form of Verdict—
Communication with the Court**

Upon retiring to your jury room to begin your deliberation, you must elect one of your members to act as your foreperson. The foreperson will preside over your deliberations and will be your spokesperson here in court.

Your verdict must represent the collective judgment of the jury. In order to return a verdict, it is necessary that each juror agree to it. Your verdict, in other words, must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with one another with a view towards reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for himself and herself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and to change your opinion if convinced it is erroneous. Do not surrender your honest conviction, however, solely because of the opinion of your fellow jurors or for the mere purpose of thereby being able to return a unanimous verdict.

Remember at all times that you are not partisans. You are judges—judges of the facts of this case. Your sole interest is to seek the truth from the evidence received during the trial.

Your verdict must be based solely upon the evidence received in the case. Nothing you have seen or read outside of court may be considered. Nothing that I have said or done during the course of this trial is intended in any way to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in any form of verdict, is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return. What the verdict shall be is the exclusive duty and responsibility of the jury. As I have told you many times, you are the sole judges of the facts.

A verdict form has been prepared for your convenience.

You will take this form to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson write your verdict on the form, date and sign the form, and then return with your verdict to the courtroom.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note, signed by your foreperson or by one or more members of the jury, through the Court Security Officer. No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing and the Court will never communicate with any member of the jury concerning the evidence, your opinions, or the deliberations other than in writing or orally here in open court.

The Court Security Officers, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury concerning the evidence, your opinions, or the deliberations.

Bear in mind also that you are never to reveal to any person—not even to the Court—how the jury stands, numerically or otherwise, on the question of whether or not MIT has sustained its burden of proof until after you have reached unanimous verdicts.